## H. M. HULL ET ALS. v. USEB SANCTUARY.

### OCTOBER TERM, 1895.

*Construction of lease.   Right to maintain trespass quare clausum.*

The defendant leased to the plaintiffs the basement of his old mill for creamery purposes and agreed to furnish sufficient water power to operate the same. If that power failed to be sufficient the plaintiffs were to use steam power and were to pay no rent while so doing. The water by which power was furnished was conducted through a ditch and flume from a dam some half mile above the mill. The water power proved insufficient owing to the fact that it was improperly applied by the defendant, and the plaintiffs used steam for power, but made use of the water flowing through the flume for other creamery purposes. Thereupon the defendant opened the dam, thus preventing the use of the water by the plaintiffs who brought this suit in trespass *quare clausum* for the injury.

*Held*, that the action would not lie, for that the lease gave the plaintiffs no title to the dam.

Trespass *quare clausum*. Heard upon the report of a referee at the March term, 1895, Chittenden county, Ross, C. J., presiding. Judgment for the defendant. The plaintiffs except.

*E. R. Hard* for the plaintiffs.

The parties have put a practical construction on this lease as to the right of the plaintiffs to use this water which should be respected by the court. *White* v. *Hammond*, 67 Vt. 1; *Whiting* v. *Dow*, 43 Vt. 262; *Hill* v. *Cox*, 54 Vt. 627; *Boutwell* v. *Harriman*, 58 Vt. 516; *Judd* v. *Ballard*, 66 Vt. 638.

*R. E. Brown* for the defendant.

To enable the plaintiffs to maintain this action they must have the right to the exclusive control of the water power under the lease. This they have not. Chitty, ss. 171-173; Gould, Waters, s. 371.

ROWELL, J. The defendant leased to the plaintiffs "the basement of the old grist-mill * * * for creamery purposes," and agreed to furnish good, satisfactory water power for running the business, and to have it ready by such a time; and in case that power failed at any time to be sufficient and satisfactory, the plaintiffs were to furnish steam power and to pay no rent while they furnished it. The "use and full control of the above-named property" were given to the plaintiffs during the term.

There was a dam somewhat over half a mile above the grist-mill from which water then was, and for thirty or forty years had been, taken through an artificial ditch and

a flume directly to the wheel of the mill for the purpose of operating the mill. The water power thus afforded, if properly applied, was more than enough to operate the creamery, which, as contemplated by the lease, the plaintiffs established and carried on. Soon after they took possession and before the commission of the alleged trespass, the plaintiffs had furnished and were using steam power to operate their creamery because of the unsatisfactory application of the water power, due to the neglect of the defendant; and at the time in question, and from about the time they took possession, the plaintiffs were using water brought through said ditch and flume to supply their steam engine and for washing purposes, but not directly as a power, and were claiming to occupy rent free, under the stipulations in the lease concerning the cessation of rent. The act complained of as a trespass consisted in opening the dam so that the water was diverted from the artificial channel and flowed in its natural course, the plaintiffs then being in possession of the property and rights covered by the lease, subject to which the defendant had title to the mill and the power. It is quite obvious that the lease did not convey to the plaintiffs such an interest in the *locus in quo* as to enable them to maintain trespass *qua. clau.* for the act complained of. The lease does not purport to convey any interest therein, but only to obligate the defendant to furnish a good, satisfactory water power. The power supplied by the dam, when properly applied, was more than sufficient to operate the creamery, and clearly the defendant had the right to use the excess to operate what remained to him of the mill, or for any other purpose, and this right and his obligation to the plaintiffs rendered it necessary that he should have the exclusive control of the dam, that he might enjoy the one and fulfill the other. This view is favored, also, by the stipulation that the plaintiffs were to occupy rent free while they had to use steam power. We therefore construe this

to be, not a demise of the *locus*, but an agreement to furnish water power, for the breach of which this action is not maintainable.

*Judgment affirmed.*